Royal Caribbean Cruises Ltd.  
1050 Caribbean Way  
Miami FL 33132  
305/539-6000

Sign On Employment Agreement    * C *

Page 1 of 6

| | | | | | |
|---|---|---|---|---|---|
| Name | BENAQUIST, MICHAEL | | USC/USR: USC | Dept: 483 | Empl ID: 159883 |
| | | | | | Crew ID: |

Marital Status : S   Sex : M   Birthdate : 4/12/1969   Place of Birth :  
Nationality : USA   United States of America   Social Security : - -  

Address (home) ......   146 FAYETTE STREET  
......  
......   mbq92@yahoo.com  
City, State, Zip   ....   WATERTOWN, MA, USA   CA   90029  
Nation   ..........   US   United States of America  
Telephone (home) ....   (617)   9234595  

Ship : VISION OF THE SEAS   Voyage # : 17865   Airport of Origin : BOSTON,   MASS  
IMO#: 9116876   Flag State Official # : 8000405   Gross Tonnage : 78,717  

---

Permanent Job Code :   GTR   GUITAR-ELECTRIC  
Monthly Total Guaranteed Pay including Guaranteed Overtime:   2,491.00  
Social Program Compensation:   15.00  
Monthly Vacation Pay :   208.00  
Hourly Overtime Rate :   .00  
Allotment :   .00  
Daily Sick Wage Rate :   33.06  

In recognition that other employees often assist in the performance of services, any gratuities/service fees paid to the employee by passengers, or collected by the company from the passengers, shall be shared with such other employees who assist with the service. The company shall determine the gratuity sharing guidelines at its sole discretion. Gratuity/service fee sharing will be published and available to the employees in the HR Center. The company shall also set guidelines for the timing of gratuity/service fee payments to employees at its sole discretion. These guidelines will also be available for review upon request in the HR Center.  
Employees may be eligible to participate in incentives, bonus and commission plans. These plans are solely at the discretion of the company and nothing under the terms of these plans are guaranteed. Copies of these plans are available for review upon request to the Department Head.

First Date of Hire :   2/24/1996  
Sign-On Date :   8/28/2014   Projected Sign-Off Date :   3/21/2015  
Effective Payroll Date :   8/28/2014  

Remark :



EXHIBIT A

Name: BENAQUIST, MICHAEL                                                      Page 2 of 6

ADDITIONAL TERMS AND CONDITIONS OF EMPLOYMENT                                 Empl ID:   159883

Throughout this Agreement Royal Caribbean Cruises Ltd. will be referred to either as " The Company" or " Employer" or " RCL". You will be referred to either as " Employee" or " Seafarer" or " Crew Member".

Employment is expressly conditioned upon the employee being of good moral character, having no prior criminal conviction for a felony or other comparable serious crime, and being able to speak and effectively communicate in English. Misrepresentation, or intentional omission of facts in the application and interview process is grounds for refusal to hire, or dismissal.

* WORK WEEK: Generally, there are seven (7) day work weeks. There are 303.10 hours of work per month included as part of the Monthly Total Pay Including Guaranteed Overtime; however, at times you may be required to work additional hours. In such cases, the Hourly Overtime Rate will be paid for any hours you work in excess of 303.10 hours per month, unless the Hourly Overtime Rate in this Agreement is specified as 0.00 in which case the employee shall not be eligible for any extra overtime pay. Every month is regarded as having 30 days and every day is regarded as one-thirtieth of a month.

*LEAVE (VACATION) PAY: Leave (vacation) pay is calculated as being equal to the Basic Monthly Wage divided by 30 multiplied by 4.5 days accrued per month of on-board service. Parts of a month shall be prorated, with one-thirtieth (1/30) being equal to one day. Leave (Vacation) Pay may be included in the Total Monthly Guaranteed Pay or paid separately depending on the terms noted above. The receipt of such Pay does not indicate permanent or continuous employment, nor does it constitute an indication that the Company will provide a future offer of employment.

* MEDICAL EXAMINATION: Employment under this agreement is expressly conditioned upon the employee taking and passing, a medical examination prior to beginning employment, and periodic physical exams thereafter, under standards prescribed by the Company. Costs for medical certificates/examinations are the responsibility of the employee.

* REQUIRED DOCUMENTATION: In order to work aboard our vessels, and transit in the United States, the employee must possess a valid passport containing C1/D visas, if applicable, valid for at least one (1) month beyond the expected sign off date. The Company will pay for the costs of visas starting with Employment Agreements entered on or after August 20, 2013.

* SAFETY AND SECURITY: The Company takes the safety and security of everyone on board (guests and crew) very seriously. As part of your employment aboard, you will be required to participate in life boat drills and other safety programs as ordered by Shipboard Management. Employees must observe all safety rules and regulations at all times, and immediately report any violations of safety policies or procedures to their supervisor, Department Head or the HR Manager. No employee will be disciplined for refusing to follow an order which the employee honestly and in good faith believes would constitute a violation of an established safety policy or procedure. Employees must also promptly report any accidents or injuries to their supervisors and medical center personnel.

* TALENT RELEASE: By signing this Employment Agreement, I grant the perpetual, worldwide and assignable right to Employer to use my name, image, likeness, voice, or any or all of them in any type of media format now known or unknown for any purpose. I acknowledge that I will not receive any compensation for any of the above. If on any occasion I do not wish to grant the above rights, I must inform my Department Head or HR Manager in writing and use reasonable efforts to avoid being recorded.

*MEDICAL BENEFITS: In the event the Employee is signed off the ship due to illness or injury which manifests while in the service of the ship, the Company shall provide necessary medical treatment (including hospitalization) at the Company's expense until the Employee is declared to be at maximum medical cure by a Company designated physician. Medical coverage beyond emergency medical stabilization shall not be provided in the event the illness or injury arises from the Employee's misconduct, including but not limited to drug and/or alcohol use, or arises from a medical condition that was known to the Employee but not disclosed during the pre-employment medical examination. Medical coverage is limited to conditions that manifest in the service of the ship. An Employee is not considered in the service of the

Name: BENAQUIST, MICHAEL                                                                                          Page 3 of 6

Empl ID : 159883

ship if he or she is on any kind of vacation leave or other leave of absence, including a medical leave. If an Employee is eligible for any kind of national or public health coverage, the Employee shall first exhaust any coverage available under the national or public systems before the Company is obligated to pay. Any Employee who rejects Company tendered medical care shall be solely responsible for any difference between Company network medical rates and the excess medical rates charged by the Employee chosen medical provider.

SICK PAY: Subject to the exceptions in the previous section, Employees who sign off the ship due to illness or injury are eligible for sick pay as determined by the Company until the Employee is declared to be fit for duty or at maximum medical cure by a Company designated physician or up to 130 days after sign off, whichever occurs first.

DEATH BENEFITS: If an Employee dies while in the service of the ship, including a death while travelling to and from the ship, the Company shall pay a death benefit to the designated beneficiary in the amount of USD$90,000 plus USD$18,000 per child under the age of twenty-one (21) up to a maximum of four children. The Employee is responsible for declaring the beneficiary at the time of hire and updating the beneficiary forms in the HR Center. No death benefit shall be due if the death was the result of misconduct, including but not limited to drug and/or alcohol use, or if the death was the result of a known pre-existing medical condition that was not declared during the pre-employment medical examination. Any death benefit payments made under this section shall be deducted from any award, settlement or recovery of damages received by the heirs of the Employee in connection with any claim or lawsuit arising out of the death of the Employee.

DISABILITY BENEFITS: If an Employee becomes disabled as a result of a work-related shipboard accident, regardless of fault, that is promptly reported to ship management, the Employee shall be entitled to a disability payment at a percentage depending on the degree of permanent disability as assigned by a Company designated physician up to a maximum amount of USD$90,000. No disability benefit shall be due if the disability was the result of misconduct, including but not limited to drug and/or alcohol use, or if the disability was the result of a known pre-existing medical condition that was not disclosed during the pre-employment medical process. Any disability payments made under this section shall be deducted from any award, settlement or recovery in connection with any claim or lawsuit by the Employee arising out of the injuries or incident in any way related to the claimed disability.

MATERNITY BENEFITS: Pregnant Employees shall be eligible for a maternity leave and 30 days of Monthly Total Guaranteed Pay unless the current Employment Agreement commences after the Employee reached her 25th week of pregnancy in which case no maternity payment is due. If the Employee is declared medically fit for duty at the conclusion of the pregnancy, but no later than 12 months after sign off for maternity leave, then the Company will rehire the Employee.

RETIREMENT BENEFIT: The Company has a Shipboard Retirement Plan available for shipboard employees. The rights and benefits of the retirement plan are determined by the Company at its sole discretion and the Company reserves the right to amend and/or terminate the plan at any time. The Plan documents are available for review at the HR Center.

SOCIAL PROGRAM COMPENSATION: It is agreed and understood that the Seafarer's Monthly Total Guaranteed Pay shall include a $15.00 payment, which is allocated as Social Program Compensation. The $15.00 Social Program Compensation shall be paid directly to the Seafarer, unless a government program makes it mandatory for the Company to pay social compensation to the government on behalf of the Seafarer, in which case the $15.00 shall be paid directly to the government agency requiring the payment as the Company's contribution. If the Social Program Compensation value is expressed as 0.00 in the terms above, the payment will be made directly to the government on behalf of the Seafarer. If the Social Program Compensation value is expressed as $15.00, the payment will be made directly to the Seafarer. It is understood that where the Social Program Compensation is paid directly to the Seafarer, it is meant to be used by the Seafarer to purchase medical insurance covering the Seafarer when on vacation, medical insurance for the Seafarer's family and to enable the Seafarer to participate in a pension fund scheme in the Seafarer's country of residence.

REPATRIATION: The Employee will be entitled to repatriation to the designated Gateway City at Company expense upon the loss, laying-up or sale of the ship, if the ship has been arrested for more than fourteen (14) days, at the end of the service period (which shall be no more than twelve (12) months), if the Employee becomes not fit for duty in the event of injury or illness, if the ship enters a war zone, or if the Employee is terminated by Employer during the probationary period. The Company shall not require a Seafarer to deposit money with the

Name: BENAQUIST, MICHAEL

Page 4 of 6

Empl ID: 159883

Company that may be used to purchase transportation to a Seafarers gateway city in the event the Seafarer is discharged at his or her own request or for cause prior to the end of the service period. However, the Company may recover the costs of repatriation from a Seafarer's wages when the Seafarer resigns at his or her own request before the end of their service period or is terminated for cause, which shall be considered serious default of the Employee's employment obligations.

COMPENSATION FOR LOSS OF SHIP: The Employee shall be entitled to total monthly guaranteed pay for a maximum of two (2) months in the event of unemployment due to the ship's loss or foundering.

MASTER RULES AND REGULATIONS MUST BE OBSERVED BY ALL SHIPBOARD EMPLOYEES.

Employee understands and accepts that the Employer may terminate this Agreement without cause provided 30 days' notice is given or monthly total guarantee pay through the end of the employment contract period up to a maximum of 30 days is paid in lieu of notice. The Employer may terminate this Agreement with cause immediately without notice. Employee accepts the position on the ship indicated above for the date shown. Employee understands that if he or she fails to show up to join the ship on the date shown above that he or she waives the right to work for the Company and any of its subsidiaries at any time in the future. Employee acknowledges having been advised how to access the Company SQM policies which contain the rules and regulations for shipboard employees. Employee agrees that any dispute relating to this Agreement and any other disputes or claims of any nature whatsoever shall first be brought within the Company grievance procedure, which may be accessed at any time as part of the Company SQM policies. If the Employee not satisfied with the outcome of the grievance procedure any claims or disputes of any nature whatsoever between Employee and Employer shall be resolved exclusively by binding arbitration in accordance with the arbitration procedure outlined in this Agreement.

ARTICLES OF AGREEMENT

Employee understands that the Articles of Agreement, including conduct policies, drug and alcohol policies, the name of the ship, IMO no., Flag State Official no., gross tonnage, propulsion power of the ship and a description of itineraries and schedules may be accessed electronically as part of the Company's SQM policies.

IMPORTANT WARNING:

The Company's rules and regulations concerning crew conduct are maintained in the Crew Conduct Policy and in other shipboard rules and regulations. Seafarers must comply with all ship rules and regulations, whether verbal or written, at all times. While all Company rules and regulations are important and must be followed, the Company is providing an excerpt of the Crew Conduct Policy concerning sexual misconduct in this agreement.

Criminal penalties for alleged sexual misconduct can lead to many years in prison. All crew members must understand that the company has a zero tolerance to any form of sexual contact between crew members and guests, on or off the ship, at anytime during the guest's cruise vacation. Any such sexual contact will subject the crew member to immediate termination without warning.

As part of this policy the company shall also:

1. Report all alleged sexual assaults to law enforcement for investigation and prosecution, including those allegations where a victim consented to the sexual encounter, but later claimed the activity was not consensual.

2. Cooperate fully with law enforcement or other government officials in the criminal investigation and prosecution of all such incidents to the fullest extent of the law regardless of where in the world the ship is located.

3. Respond to inquiries from any future prospective employer that any crew member terminated for violating this policy, even without

criminal charges, is not eligible for rehire. Crew members therefore must understand that, because job opportunities in the cruise industry are limited, sexual contact with any guest in violation of company policy will have the likely practical effect of making the crew member ineligible to work for other cruise line employers.

Every crew member to whom this policy applies consents to and hereby agrees to be fully bound by these provisions.

Arbitration Procedure

1. All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, Employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S, (" The Convention" ), except as provided by any government mandated contract.

2. All arbitrations must be commenced within two (2) years from the date of the occurrence giving rise to the grievance or dispute, or the date the Seafarer knew or should have known of the occurrence giving rise to the grievance or dispute, except for claims for personal injury or death, which must be commenced within three (3) years from the date of the occurrence giving rise to the injury or death or the date the Seafarer knew of should have known of the occurrence giving rise to the grievance or dispute. Claims brought forth thereafter will not be recognized and will be time-barred.

3. Any arbitration shall take place in Miami, Florida, Oslo, Norway, or in any location agreed by the Owners/Company and the Seafarer. The procedural and substantive law of the arbitration shall be the law of Norway without regard to conflict of law principles.

4. The language of any arbitral proceedings shall be English.

5. Any arbitration, except as provided by any government mandated contract, shall be administrated in accordance with the American Arbitration Association - International Center for Dispute Resolution (" ICDR" )  Rules, as amended with agreement of the parties, with the American Arbitration Association (" AAA" ) under its International Dispute Resolution Procedures as the appointing authority.

6. All arbitrations must be brought by or on behalf of Seafarers in their own names, and not on behalf of others on an unnamed basis.

7. The Owners/Company and the Seafarer shall jointly appoint one arbitrator. In the event there is no agreement, an arbitrator shall be chosen pursuant to the ICDR rules. In any case, an arbitrator shall be appointed within ninety (90) days of the dispute being presented for arbitration.

8. The ICDR Rules of the American Arbitration Association shall govern matters of discovery and procedure not specifically addressed in this Agreement.

9. Each party shall bear its own attorney's fees and costs incurred in connection with an arbitration, but the Owners/Company shall pay for the costs of the arbitration itself, including charges by the arbitrator.

10. The arbitrator, and not any federal, state or local court or agency shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Employment Agreement including, but not limited to any claim that

Name: BENAQUIST, MICHAEL

Page 6 of 6

Empl ID: 159883

all of part of this Employment Agreement is void or voidable and as to choice of law.

11. Any provision of this Employment Agreement that is determined in any jurisdiction to be unenforceable for any reason shall be deemed severed from this Agreement in that jurisdiction only and all remaining provisions shall remain in full force and effect.

E. Governing Law

Any grievance or other dispute shall be governed in accordance with the laws of Norway, without regard to any conflicts of laws principles.

By signing this Agreement, Employee expressly consents to and authorizes the Company to pay wages into an account to secure a payroll, debit or stored value card as may be arranged by the company from time to time. Any Employee electing not to participate in the payroll, debit or stored value card program must provide a written request to the Payroll Office prior to the first payroll closing date after joining or the Employee will automatically be enrolled in the program for the duration of the Agreement.

Employee Signature _____ Date 8/28/2014

Employee's signature certifies that the employee has read, understood, and agreed to the terms of this agreement. Employee also acknowledges that he/she has been provided with a copy of this agreement.

Employer representative Signature _____ Date 8/27/14

Employer representative - Printed Name _____ JDE ID# 472798

Location / port where agreement is signed FLL